UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CLAUDIA ARELY MOLINA DE RAMIREZ, ) ) ) ) Plaintiff, ) ) v. ) ) WILLIAM P. BARR, et al., ) ) Defendants. ) ) | Civil Action. No. 18-1516 (PLF) |

OPINION

On June 26, 2018, plaintiff Claudia Arely Molina de Ramirez filed a civil complaint [Dkt. No. 1] challenging the Trump Administration's Zero-Tolerance Policy of separating certain immigrant parents from their children at the United States-Mexico border. See Complaint at 1. Ms. Ramirez is a citizen of El Salvador and the mother of three minor children who would like to seek asylum in the United States; she and her children have not been separated under the challenged Zero-Tolerance Policy. See id. at 9, 33. Defendants filed a motion to dismiss [Dkt. No. 13] on September 14, 2018.[1] Upon careful consideration of the briefs, the relevant legal authorities, and the entire record in this case, the Court will grant defendants'

---

[1] Ms. Ramirez sued the following individual defendants in their official capacities: the Attorney General of the United States, Jeff Sessions; Secretary of the Department of Homeland Security Kirstjen Nielsen; Secretary of the Department of Health and Human Services Alex Azar; Director of the Office of Refugee Resettlement Scott Lloyd; and Kevin McAleenan, Acting Commissioner of U.S. Customs and Border Protection. See Complaint at 1. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current holder of each of these offices is substituted for his or her predecessor as a party to this litigation.

1

motion to dismiss.[2] The Court concludes that Ms. Ramirez does not have constitutional standing to challenge a policy under which she has suffered no injury. Accordingly, the Court lacks subject matter jurisdiction to resolve her claims.

I. BACKGROUND

On April 6, 2018, the Attorney General of the United States announced the Zero-Tolerance Policy, under which all immigrant parents unlawfully crossing the United States-Mexico border with their children would be subject to criminal prosecution and forcibly separated from their children. See Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't, 319 F. Supp. 3d 491, 494-95 (D.D.C. 2018). On June 20, 2018 – before Ms. Ramirez filed the instant suit – President Trump issued an Executive Order rescinding and clarifying several aspects of the Zero-Tolerance Policy and stating the government's policy of housing parents and children together, subject to certain limitations. See Exec. Order No. 13,841, 83 Fed. Reg. 29,435 (June 20, 2018).

Ms. Ramirez filed suit to challenge the legality of the Zero-Tolerance Policy and the conduct that defendants undertook in applying it. But unlike plaintiffs in a number of the other suits challenging the Trump Administration's Zero-Tolerance Policy, Ms. Ramirez has not actually been separated from her children by the United States government – under the challenged policy or otherwise. Instead, Ms. Ramirez is already in the United States, Response at 2; Reply at 2, and "she wishes to return to El Salvador and bring her children back with her to

---

[2] The Court considered the following documents and accompanying attachments and exhibits in resolving the pending motion: Complaint [Dkt. No. 1]; defendants' motion to dismiss ("Motion") [Dkt. No. 13]; plaintiffs' response in opposition to the motion to dismiss ("Response") [Dkt. No. 27]; defendants' reply in support of the motion to dismiss ("Reply") [Dkt. No. 30]; plaintiff's response to show cause order ("Show Cause Response") [Dkt. No. 32].

seek asylum in the United States." Complaint at 34. Ms. Ramirez reports that her three minor children attempted to travel from El Salvador to the United States in 2016 – well before the implementation of the challenged Zero-Tolerance Policy – but were kidnapped in Guatemala. See id. The children were rescued and returned to El Salvador, where they remain. See id.

Ms. Ramirez now fears that if she brings her children to the United States they will be separated from her, "[b]ecause of the Trump Administration's widely reported child-separation policy . . . ." Complaint at 35. She argues that it is a "discriminatory policy aimed at all persons from El Salvador, amongst other Central American [c]ountries." Id. at 36. Ms. Ramirez therefore seeks a declaratory judgment (i) that the Zero-Tolerance Policy violates her Fifth Amendment equal protection rights (Count I), id. at 35-38; and (ii) that the government acted arbitrarily and capriciously in violation of the Administrative Procedure Act (Count II), id. at 38-39.

The defendants advance two grounds for dismissing this suit. First, they move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this Court lacks the subject matter jurisdiction to resolve this suit because Ms. Ramirez has not established an actual or imminent injury-in-fact that is sufficient to establish her constitutional standing. Second, the government moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Ms. Ramirez has failed to state a claim for which relief can be granted with respect to either her Fifth Amendment claim or her Administrative Procedure Act claim.

On June 25, 2019, this Court issued a Show Cause Order requiring Ms. Ramirez to explain why her suit should not be dismissed for lack of standing. See Show Cause Order, Dkt. No. 31, at 1. Ms. Ramirez responded to the show cause order on July 9, 2019, claiming that

she has pre-enforcement standing to challenge the Zero-Tolerance Policy. See Show Cause Response at 3 (citing Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

## II. LEGAL STANDARD

### A. Motions to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress. See, e.g., Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017). The plaintiffs bear the burden of establishing that the Court has jurisdiction. See Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017). In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction, the Court must construe the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true. See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017). Although the Court must grant plaintiffs the benefit of all reasonable inferences, it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept plaintiffs' legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012). Finally, in determining whether a plaintiff has established jurisdiction, the Court may consider materials beyond the pleadings where appropriate. Am. Nat'l Ins. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011); Cumis Ins. Society Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

### B. Constitutional Standing

Standing is one of the three "inter-related judicial doctrines" that – along with the requirements of mootness and ripeness – "ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'" Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006)

(quoting U.S. CONST. art. Ill, § 2). Standing is "one of the essential prerequisites to jurisdiction under Article III." Fleming v. Cherokee Nation, 2019 WL 2327814, at *3 (D.D.C. May 31, 2019). The "irreducible constitutional minimum of standing" contains three elements, and "the party invoking federal jurisdiction bears the burden of establishing" them. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs must establish (1) a concrete injury-in-fact – the invasion of a legally protected interest – that is particular to plaintiffs and that is actual or imminent, as opposed to conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's conduct – that is, a causal connection exists between the injury and the defendants; and (3) that it is likely, and not merely speculative, that a favorable decision on the merits will redress plaintiff's injury. See Lujan v. Defs. of Wildlife, 504 U.S. at 560-61; see also Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). As with other motions to dismiss under Rule 12(b)(1), "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of legal conclusions" nor "accept inferences that are unsupported by facts set out in the complaint." Arpaio v. Obama, 797 F.3d at 19.

Of the three components of standing, the requirement of a concrete injury that is actual or imminent is of particular importance to this case. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." Clapper v. Amnesty Int'l USA., 568 U.S. 398, 409 (2013). Therefore, when a plaintiff seeks to establish standing based on projected future injury, she must "satisfy the well-established requirement that the threatened injury [is] 'certainly impending'" Id. at 401 (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)). The *possibility* of injury – even where an "objectively reasonable likelihood" of injury exists – is insufficient for standing purposes. Id. at 410. The "certainly impending" requirement

is unlikely to be satisfied by claims that depend on a "highly attenuated chain of possibilities" or on assumptions about what government will do when the law "*authorizes* – but does not *mandate* or *direct*" the conduct that plaintiff fears. See id. at 410-11 (emphases in original).

III. ANALYSIS

On the facts before the Court, the possibility that Ms. Ramirez's children will be separated from her if she one day brings them to the United States is not an injury sufficient to establish her standing to challenge the Zero-Tolerance Policy. The Court lacks subject matter jurisdiction to resolve Ms. Ramirez's claims and will therefore grant the motion to dismiss.[3]

The central facts of this case are undisputed. Ms. Ramirez's children have not entered the United States. See Complaint at 34. Their previous attempt to travel to the United States terminated far from the border. See id. And Ms. Ramirez and her children have never been separated *by the United States government*, either under the Zero-Tolerance Policy challenged by this suit or otherwise. See id. at 34-35. Accordingly, Ms. Ramirez has not yet suffered any injury that is traceable to defendants' conduct. See Response at 8 (claiming standing for an injury that "is imminent rather than actual"). Instead, Ms. Ramirez's challenge to the Zero-Tolerance Policy depends on an injury that she can only anticipate: she is "afraid to bring her children to the U.S. to seek asylum, fearing that they would be taken from her, too." See Response at 2.

Ms. Ramirez relies on the doctrine of pre-enforcement standing to argue that this anticipated separation is an imminent injury that is sufficient to establish standing to challenge the Zero-Tolerance Policy. See Response at 7-10; Babbitt v. United Farm Workers Nat'l Union,

---

[3] Accordingly, the Court need not reach defendants' arguments under Rule 12(b)(6) that Ms. Ramirez has failed to state a claim.

442 U.S. at 298. Pre-enforcement standing is one means of demonstrating that a future injury is "certainly impending," as Article III standing requires. See Clapper v. Amnesty Int'l USA, 568 U.S. at 409. Under this doctrine, "a plaintiff who challenges a *statute* must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. at 298 (emphasis added).[4] Pre-enforcement standing requires a plaintiff to establish (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) that "there exists a credible threat of prosecution thereunder." Id. In this circuit, plaintiffs must prove that the threat is "both credible and imminent." Ord v. District of Columbia, 587 F.3d 1136, 1140-41 (D.C. Cir. 2009). This requires establishing that "[plaintiff's] prosecution results from a special law enforcement priority, namely that they have been singled out or uniquely targeted by the government for prosecution." Id. at 1140-41 (internal quotations omitted). See also Navegar v. United States, 103 F.3d 994, 998, 1000-01 (D.C. Cir. 1997) (finding pre-enforcement standing where statute limited items made by single company, but not on the basis of statutory restriction of general categories of items).

  Ms. Ramirez meets neither of the two requirements for pre-enforcement standing in this circuit. First, the mere desire to do something does not, without more, establish the "intention to engage in a course of conduct" that would provoke enforcement of the challenged Zero-Tolerance Policy. Babbitt v. United Farm Workers Nat'l Union, 442 U.S. at 298. See also Seegars v. Gonzales, 396 F.3d 1248, 1253 (D.C. Cir. 2005) (requiring a "credible statement . . .

---

[4] For the purposes of this analysis the Court assumes, but need not decide, that pre-enforcement standing is also available for policies and other Executive actions (in addition to statutes). The Court finds that Ms. Ramirez does not have pre-enforcement standing in any event.

7

of intent to commit [the] violative acts" at issue). A seminal case on Article III standing concerned circumstances that are reasonably analogous to Ms. Ramirez's:

> [T]he affiants' profession of an intent to return to the places they had visited before – where they will presumably, this time, [suffer injury because of the requirements of the law challenged by affiants' suit] – is simply not enough. Such some day intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the actual or imminent injury that our cases require.

Lujan v. Defs. of Wildlife, 504 U.S. at 564 (emphasis in original) (internal quotations and modifications omitted). Similarly, Ms. Ramirez's complaint alleges little more than a "some day intention[]," id., to travel to El Salvador and bring her children to the United States.

Ms. Ramirez's counsel attempts to distinguish Lujan and satisfy pre-enforcement standing, claiming that "Ms. R[amirez] has asserted an intention to seek asylum with her children *now*." See Response at 9 (emphasis added). This account is unpersuasive, if not misleading: whatever Ms. Ramirez's actual plans may be, the complaint itself contains no such directly asserted intention. Rather, it presents Ms. Ramirez's vague aspirations to seek asylum for her children without any details of when and how she plans to do so. See Complaint at 34-35. At best, Ms. Ramirez must resort to arguing that it is a "reasonable inference, based on [her] extreme fear[,] that [she] intends to seek asylum immediately." See Response at 9. On the bare facts of the complaint, and in the context of the "especially rigorous" standing inquiry required in claims of unconstitutional government action, see Raines v. Byrd, 521 U.S. 811, 819-20 (1997), this immediacy is far from a reasonable inference.

Second, even if the Court were to assume that Ms. Ramirez *does* have concrete plans to immediately attempt to bring her children to the United States, she has failed to establish the "credible and imminent" threat of prosecution and separation that pre-enforcement standing

requires in this circuit. Ord v. District of Columbia, 587 F.3d at 1140. As an initial matter, Ms. Ramirez does not provide facts establishing that she has been or will be "singled out or uniquely targeted by the government for prosecution." See id. at 1141. Among other gaps, the complaint lacks information on whether Ms. Ramirez intends to enter the United States at a port of entry or elsewhere, which has substantial implications for whether Ms. Ramirez will be prosecuted. See Lujan v. Defs. of Wildlife, 504 U.S. at 560 n.1 (requiring a party to demonstrate injury in a "personal and individual way").

The injury Ms. Ramirez forecasts would require at least six things to happen in sequence: (1) Ms. Ramirez travels from the United States to El Salvador, (2) Ms. Ramirez and her children successfully make it from El Salvador to the border of the United States; (3) Ms. Ramirez and her children cross the border; (4) the United States government detects Ms. Ramirez; (5) the government detains Ms. Ramirez; and (6) the government decides to separate Ms. Ramirez from her children without lawful justification. This is precisely the kind of "highly attenuated chain of possibilities" that is insufficient to establish standing. See Clapper v. Amnesty Int'l U.S.A., 568 U.S. at 410-11. The possibility that the government would separate Ms. Ramirez from her children is particularly speculative. On June 20, 2018 – before Ms. Ramirez filed her complaint – President Trump issued an Executive Order rescinding and clarifying the Zero-Tolerance Policy. The Order states a new policy of housing families together, subject to certain limitations. See Exec. Order 13,841, 84 Fed. Reg. 29,435 (June 20, 2018). Although the modified policy does not strictly prohibit separations in all circumstances, it allows for discretion and case-to-case variance, which vitiates the claim that separation is "certainly impending" for any Central American who crosses the border. See Clapper v. Amnesty Int'l USA., 568 U.S. at 401.

Moreover, Judge Dana Sabraw of the United States District Court for the Southern District of California, who is supervising class action litigation of the family separation practices at issue in this case, has issued a far-reaching preliminary injunction. It prohibits a variety of government actors – including every one of the defendants in this case – from "detaining Class Members in DHS custody without and apart from their minor children, absent a determination that the parent is unfit or presents a danger to the child" (unless the parent declines reunification). See Ms. L. v. U.S. Immigration and Customs Enf't, 310 F. Supp. 3d 1133, 1149 (2018). Whether or not Ms. Ramirez would be a member of the class that is directly protected by the order – and she likely would be if she returned to El Salvador and was separated from her children without justification upon entering the United States – the functional effect of the injunction is to make it less likely that the government will separate families, including Ms. Ramirez's.[5] Such separation now would risk defiance of a federal court order and complicating the government's obligations in the Ms. L. litigation.

In short, the separation that Ms. Ramirez fears is not a credible and imminent threat, as required for pre-enforcement standing; nor is it so certainly impending that it otherwise amounts to an injury-in-fact.

---

[5] Ms. Ramirez notes that she would not be a member of the Ms. L. class because she is in the United States and the class includes only parents who enter with their children at the border. See Response at 10. But Ms. Ramirez also says she "wishes to return to El Salvador and bring her children back with her to seek asylum in the United States." Complaint at 34. If she were detained at the border and separated from her children absent legal justification, she would be a member of the Ms. L. class. See Ms. L. v. U.S. Immigrations and Customs Enforcement, 330 F.R.D. 284, 292 (S.D. Cal. 2019).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion to dismiss [Dkt. No. 13]. A separate Order consistent with this Memorandum Opinion will issue this same day.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 30, 2019